IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANWAR RANDLE, et al., )
 )
 Plaintiffs, )
 )
vs. ) CIVIL NO. 08-cv-856-DRH
 )
JAMES DAVIDSON, et al., )
 )
 Defendants. )

**MEMORANDUM AND ORDER**

**HERNDON, Chief Judge:**

Inmates Anwar Randle, O'Shane Dismuke, Cory Crum, and David Chabitch bring this action for deprivations of their constitutional rights pursuant to 42 U.S.C. § 1983.[1] Plaintiffs were warned of the hazards of joining group litigation, *see Bouriboune v. Berge*, 391 F.3d 852 (7th Cir. 2004), and the Court gave each inmate an opportunity to withdraw from this action (Doc. 20). This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>   (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>   (2) seeks monetary relief from a defendant who is immune from such relief.

---

[1] Inmates Dionsio Reyes, Che Turner, and Jonathan Wilborn were dismissed as Plaintiffs to this action by a separate Memorandum and Order (Doc. 25).

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 590 U.S. 544, 570 (2007). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, No. 08-4286, 2009 WL 2535731, at *5 (7th Cir. Aug. 20, 2009).

Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Service*, No. 06-4260, 2009 WL 2498580, at *2 (7th Cir. Aug. 18, 2009).

**THE COMPLAINT**

The Plaintiffs assert that Southwestern Correctional Center administrative officials authorized a TACT team shakedown, resulting in the violation of several inmates' Constitutional rights under the Fourth, Eighth, and Fourteenth Amendments. The Plaintiffs claim that the shakedown was unnecessary because there had been no prior disorderly conduct that would have made the shakedown a security requirement. Additionally, Plaintiffs allege that the way the shakedown was actually performed violated their rights.

2

According to the complaint and attached exhibits, TACT team members arrived in Housing Unit 1 of the Southwestern Correctional Center around 7:00 AM on May 13, 2008 in full riot gear, clubs in hand. The Plaintiffs were told to strip naked in front of the TACT team. One of the team's members (Jackie Thompson) was female.

Next, inmates were told to put on their blue pants, blue shirts, and shower shoes and were taken to a gymnasium - having to walk through a "heavy rain" - where they were required to sit cross-legged "Indian-style" with their chins to their chests and their arms behind their backs. The inmates were also ordered to keep their hands from touching the floor. In fear of being beaten with the TACT team's clubs, the inmates held their positions for 2.5 hours, allegedly causing their limbs to lose circulation and go numb. Several inmates passed out and none of the inmates present were able to stand on their own for a period of time afterward.

Following the incident, the Plaintiffs were told they had been punished for two reasons: not holding each other accountable and not meeting the level of performance of prison officials or the Director of Civigenics/CEC. Plaintiff's contend that prison officials only have two forms of punishment at their disposal: punitive confinement and the loss of privileges. None of the inmates were subjected to either of these methods, but were instead subjected to the treatment described above. Plaintiffs argue the methods used were unlawfully intended to threaten their physical and mental health.

## **DISCUSSION**

The Plaintiffs contend that their constitutional rights were violated under the Fourth Amendment when the TACT team unnecessarily shook down their cells and improperly strip searched them. The inmates claim to have been on their best behavior and that there was no

security threat when the TACT team rushed into their housing unit. Implicit in this claim is that prison officials are limited to using the TACT team and strip searches *only* when there is some major disturbance at a facility.

The Court, however, does not understand the Constitution as limiting the ability of prison officials to conduct searches in the manner suggested by Plaintiffs. A prisoner has no expectation of privacy in his prison cell. As noted by the Supreme Court of the United States:

> [S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

*Hudson v. Palmer*, 468 U.S. 517, 526 (1984). As such, Plaintiffs are subject to having their cells (and by extension their bodies) searched whenever prison officials deem such searches necessary or desirable - not just when there are exigent circumstances. Prison officials are entitled to be pro-active with regard to institutional security and safety issues and are not restricted to merely being reactive to existing or impending problems. It is for prison officials, not this Court, to determine the level of scrutiny to be given prisoners, their personal items, and their cells as part of their duty to maintain an orderly, secure, and well-functioning facility. Therefore, Plaintiffs have no constitutional claim that prison officials may only conduct shakedown and strip searches if the facility has been unruly or if there is a specific threat to institutional safety and security.

The presence of a female TACT member during the strip search, however, presents a different issue. An inmate's right to privacy may be violated where observation is necessarily intrusive, such as during a non-emergency strip search. *See Meriwether v. Faulkner,* 821 F.2d 408, 418 (7th Cir.1987); *Cookish v. Powell*, 945 F.2d 441 (1st Cir.1991); *Forts v. Ward*, 621

4

F.2d 1210 (2d Cir.1980); *Lee v. Downs,* 641 F.2d 1117 (4th Cir.1981); *Kent v. Johnson*, 821 F.2d 1220 (6th Cir.1987); *Gunther v. Iowa State Men's Reformatory,* 612 F.2d 1079 (8th Cir. 1980); *Timm v. Gunter*, 917 F.2d 1093 (8th Cir.1990); *Grummett v. Rushen,* 779 F.2d 491 (9th Cir.1985); *Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir.1988); *Jordan v. Gardner*, 986 F.2d 1521 (9th Cir.1993); *Cumbey v. Meachum*, 684 F.2d 712 (10th Cir.1982); *Hardin v. Stynchcomb*, 691 F.2d 1364 (11th Cir.1982); *Bowling v. Enomato*, 514 F.Supp. 201 (N.D.Cal.1981); *Robbins v. South*, 595 F.Supp. 785 (D.Mont.1984); *Miles v. Bell,* 621 F.Supp. 51 (D.Conn.1985); *Smith v. Chrans*, 629 F.Supp. 606 (C.D.Ill.1986); *Johnson v. Pennsylvania Bureau of Corrections,* 661 F.Supp. 425 (W.D.Pa.1987).

The Plaintiffs claim that the strip search was unprovoked and was a result of the housing unit's failure to meet a certain level of performance. Taking Plaintiff's allegation as true, the strip search was arguably not part of an emergency situation at the facility. Therefore, Plaintiffs' claim that their privacy rights were violated by the involvement of a female guard in the strip search survives threshold review and should not be dismissed at this time.

The Plaintiffs allege that following the strip search, they were taken to the gymnasium. In the gymnasium, Plaintiffs were required to hold painful positions for extended amounts of time which Plaintiffs claim constituted cruel and unusual punishment in violated of their Eighth Amendment rights.

The Eighth Amendment prohibiting cruel and unusual punishment is applicable to the states through the Fourteenth Amendment. Where, as here, the allegations of an Eighth Amendment violation come from the activities of prison officials in the administration of the prison system, an evaluation of the Plaintiffs' claim requires this Court to determine whether the

5

action was sufficiently serious (the objective component) and whether the prison officials acted with a sufficiently culpable state of mind (the subjective component). *See Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991).

With regard to the objective component, although no force was actively used against them, Plaintiffs contend that they were required to assume and hold a position for over 2 hours. According to the complaint, holding the position for that time period caused the Plaintiffs' limbs to go numb and caused them to "scream in agonizing pain." Taking these allegations as true, Plaintiffs have plead facts indicating that the actions of the prison officials in forcing them to maintain these positions was sufficiently serious.

With regard to the subjective component, there are two standards to be used in determining whether prison officials have acted with a sufficiently culpable state of mind. Where an inmate is challenging the conditions of his confinement, the court must decide whether the prison officials were "deliberately indifferent" to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). When an inmate challenges the actions of prison officials during a prison disturbance or disruption, the court must determine "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

In case at hand, Plaintiffs allege that there was no disturbance and no immediate security risk when they were forced to sit in the gymnasium in the painful position. According to the complaint, prison officials were merely upset that the inmates "were not holding each other accountable" and "because they were not meeting the level of performance" set by prison officials. Because the complaint does not allege a prison disturbance or other exigent

6

circumstance, the Court believes that the *Farmer* deliberate indifference standard applies to this case. "Deliberate indifference" requires the Plaintiffs to prove that the Defendants both knew about and actively disregarded an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. However, whether a prison official has the requisite knowledge

> is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Id*. at 842. Based on the foregoing, Plaintiffs' claim that their Eighth Amendment rights were violated by requiring them to maintain painful positions for over two hours survives threshold review and should not be dismissed at this time.

Plaintiffs' claims against Defendant Davidson, however, should be dismissed pursuant to 28 U.S.C. § 1915A. The instant complaint contains no fact allegations concerning Defendant Davidson. It appears that the Plaintiffs have named him as a Defendant solely because he is the Warden at Southwestern Illinois Correctional Center and, therefore, vicariously responsible for the acts of his subordinates (Defendants

## DISPOSITION

In summary, Plaintiffs' complaint against **DAVIDSON** does not survive review under § 1915A. Accordingly, Plaintiffs' claims against **DAVIDSON** are **DISMISSED** with prejudice. Plaintiff is advised that the dismissal of this action will count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). *See George v. Smith,* 507 F.3d 605, 607-08 (7th Cir. 2007); *Boriboune v. Berge,* 391 F.3d 852, 855 (7th Cir. 2004). Because there are no claims currently pending against him, **DAVIDSON** is **DISMISSED** as a Defendant in this action.

**IT IS FURTHER ORDERED** that Plaintiffs shall complete and submit USM-285 forms for Defendants **PARKER, VITALE,** and **MORRISON** within **THIRTY (30) DAYS** of the date of entry of this Memorandum and Order. The Clerk is **DIRECTED** to send Plaintiff USM-285 forms with Plaintiff's copy of this Memorandum and Order. **<u>Plaintiff is advised that service will not be made on a defendant until Plaintiff submits a properly completed USM-285 form for that defendant.</u>**

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **PARKER, VITALE,** and **MORRISON** . The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **PARKER, VITALE,** and **MORRISON** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form. With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained

only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566©).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the

complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636©), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts. This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

If Plaintiff does not comply with this Order, this case will be dismissed for failure to comply with an order of this Court. FED.R.CIV.P. 41(b); *see generally Ladien v. Astrachan,* 128 F.3d 1051 (7th Cir. 1997)*; Johnson v. Kamminga,* 34 F.3d 466 (7th Cir. 1994).

**IT IS SO ORDERED.**

**DATED:** September 8, 2009

/s/   DavidRHerndon
**DISTRICT JUDGE**